No. 34,011

THE FIDELITY AND CASUALTY COMPANY, a Corporation of New York, *Appellant*, v. E. D. REED and D. L. WHEELOCK, a Copartnership, d. b. a. REED & WHEELOCK, *Appellees*.

(86 P. 2d 522)

Opinion filed January 28, 1939.

*C. Vincent Jones* and *Wayne W. Ryan*, both of Clay Center, for the appellant.

*W. T. Roche*, of Clay Center, for appellee Reed; *James V. Humphrey* and *Arthur S. Humphrey*, both of Junction City, for appellee Wheelock.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover for premiums on three insurance policies issued by plaintiff to defendants, as partners engaged in contracting for highway construction, etc. One policy was dated September 24, 1932; the other two December 31, 1930. The

defendants answered separately. Defendant Reed filed a verified answer denying generally and alleging there had been a full compromise and settlement of all the indebtedness by an assignment in writing dated February 24, 1933, of an indebtedness due defendants from Armstrong Paving Company, the assignment being accepted in full payment by plaintiff. He also alleged the action was barred by the statute of limitations.

Defendant Wheelock filed a verified answer denying generally, alleged dissolution of the partnership on January 1, 1932; that the assignment was not executed by him or anyone authorized by him; that the assignment paid plaintiff's claim; and other matters not now material.

Plaintiff's reply denied allegations of the answers inconsistent with its petition and alleged the assignment was taken as a written acknowledgment of the debt and as some security therefor, and that at the time it was executed defendants knew it was worthless; that defendants were estopped to deny they were partners, etc.

Some of the facts were agreed to prior to the trial, which was by jury. While the abstract does not disclose clearly, apparently it was understood from the start of the trial the only question to be submitted to the jury was:

"State whether the assignment of February 24, 1933, from Reed & Wheelock to The Fidelity and Casualty Company was made as settlement in full or as security."

At the conclusion of the trial this question was submitted to the jury under instructions, of which no complaint is made, and its answer was: "Paid in full." The trial court approved the verdict and rendered judgment for the defendants. Plaintiff's motion for a new trial was denied and it appeals, specifying errors which will be discussed in the order presented in its brief.

Preliminary to that discussion, it is to be noted that the insurance policies in question were written through plaintiff's office in St. Louis, its resident manager there being J. H. Belden, who had been in correspondence with defendant Reed concerning payment of the above premiums. Reed had advised him that he had a claim against Armstrong Paving Company; that S. D. Butters, of Des Moines, Iowa, who was also an agent of plaintiff, had been appointed receiver of the paving company, and Reed would be glad to authorize Butters to pay Belden the amount due for premiums on payment of his claim of $2,500 against the paving company. Belden wrote

Reed that he would write Butters and if the matter was satisfactory to Butters, "we are quite sure there will be no difficulty in working the matter out." Omitting details, Reed saw Butters and the following document was prepared by Butters, signed by Reed and ultimately reached Belden:

"ASSIGNMENT

"We hereby assign to the Fidelity & Casualty Company interest in the amount of $1,109.26, of our claim against the Armstrong Paving Company covered by one promissory note in the amount of $2,500. This assignment to cover the amount of money due the Fidelity & Casualty Company from Reed & Wheelock on the following policies:

Fidelity & Casualty No. 6443810.
Fidelity & Casualty No. 2383470.
Fidelity & Casualty No. A89954.

"We hereby direct S. D. Butters, receiver for the Armstrong Paving Company, to pay over to the Fidelity & Casualty Company the sum of $1,109.26 of the proceeds received from this note.

"Signed this 24th day of February, 1933.    "REED & WHEELOCK,
By E. D. REED.

"Notice accepted—S. D. Butters, *Rec.*"

It is this document which plaintiff contended was an acknowledgment of the debt and security for it, and which defendants contended was payment.

It is first contended the trial court erred in rejecting offered evidence. There is no question but that the rejected evidence was properly brought before the trial court on motion for a new trial.

Plaintiff contended that Belden was without authority to accept the assignment in settlement of the claim for premiums due. In that connection, it offered a contract of employment between the company and Belden. An objection was made and sustained for the reason that the contract did not tend to prove any issue, and also for other reasons which we need not review. An examination of the document shows it was dated May 4, 1920, covered employment from March 1, 1920, to February 28, 1921, and could have been terminated at any time on thirty days' notice for certain parts of the business, and under certain circumstances could have been terminated at any time. The record fails to show the contract was continued in force by any agreement of any kind. We need not review the authorities cited in the briefs covering the other objections made to this evidence nor the comment of the trial court. The contract covered a period too remote and did not tend to prove the issue, and objection to its being received was properly sustained.

Complaint is also made because the trial court refused to permit Belden to testify as to the extent of his authority. Space does not permit, and no good purpose would be served by quoting specific questions and answers. An examination of the record shows the questions objected to were so framed that answers thereto would have been mere legal conclusions. The ruling thereon was correct.

A further contention is made the trial court erred in refusing to permit the witness Butters to testify concerning instructions given him by long-distance telephone conversation with Belden shortly before the assignment was prepared by Butters. Appellant directs our attention to *State v. Pearce,* 87 Kan. 457, 463, 464, 124 Pac. 814; *State v. Marsee,* 93 Kan. 600, 602, 603, 144 Pac. 833; *State v. Uhls,* 121 Kan. 377, 381, 382, 247 Pac. 1050, and contends they support its claim the rejected testimony was a part of the *res gestae.* The record shows that the meeting between Reed and Butters was arranged by Belden. At the trial Butters was asked whether anything was said by Reed as to whether the assignment was to be made as collateral. Butters said there was not, and then volunteered the statement that two or three hours earlier he had a telephone call from Mr. Belden at St. Louis. Objection was made to his stating the contents of the call, unless it was in the hearing of Reed. The affidavit used on motion for a new trial is to the effect Belden told him to take the assignment for collateral, but it does not state the instruction was communicated to Reed. It seems too clear to require discussion that the instructions of Belden to Butters limiting the latter's authority, none of which was communicated to Reed, are not admissible against Reed to show Butter's lack of authority, if there was such lack. The mere fact the instructions were given shortly before the agent acted for his principal did not have the effect of making the instructions part of the *res gestae* under the situation here obtaining. So far as Reed is concerned, it is immaterial whether the instructions were given two or three hours or two or three weeks before Butters acted. The instructions, so far as Reed was concerned, were secret, and did not bind him. (See *Aultman v. Knoll,* 71 Kan. 109, syl. ¶ 3, 79 Pac. 1074; 2 C. J. 566.)

Complaint is also made the trial court erred in refusing to admit two letters written in March, 1933, one by a firm of attorneys to Butters claiming a lien on the $2,500 Armstrong Paving Company note mentioned in the assignment, the other being from Butters to Belden forwarding copy of the first letter. There is no claim Reed

knew of either letter, but it is urged they were admissible to impeach Reed, who testified he had paid the attorneys. The letters were first offered before Reed had testified. They were again offered during his cross-examination. The issue being tried was whether the assignment was taken as collateral or as payment, not whether the assigned portion of the note was good or bad. It appears the attempted impeachment was on a collateral matter, and assuming proper foundation had been laid, the trial court did not err in its ruling.

On objection it was self-serving, the trial court refused to admit in evidence a letter written by Butters to Reed in 1936 referring to payment of premiums to plaintiff company "which you collateralized by making an assignment of a claim which you had against the Armstrong Paving Company," and advising that creditors received nothing through the receivership. It is argued here the letter was admissible to impeach a certain statement of Reed. The letter was offered before Reed had testified and the trial court properly excluded it.

Without reciting details, we have examined appellant's complaints with respect to exclusion of proceedings in the Armstrong Paving Company receivership and of a telegram from Reed to Belden in January, 1937, advising him that Wheelock would not be in Clay Center, Kan., on a certain day, and find the complaints are not well founded.

We shall not discuss appellant's complaint that its counsel was not permitted to read documentary evidence to the jury, in view of its statement in its brief that the record does not show that to be the case.

Finally, under a general heading of improprieties and additional erroneous rulings prejudicial to appellant, are complaints a full discussion of which would require a restatement of much that transpired at the trial. We notice the complaint that in the examination of prospective jurors, each was asked whether he owned stock in an insurance company; that in the argument on submission of the cause, reference was again made to insurance companies, where the money from premiums went, and that a persistent effort was made to inject in the minds of the jury an appeal to sectionalism and prejudice. No doubt the same argument made here was made to the trial court on the motion for a new trial. It must be remembered that this was an action to recover insurance premiums, the

name of the plaintiff indicated the character of its business, and to have kept reference to insurance from the case was an impossibility. Insofar as argument on submission of the cause is concerned, it may be noted that no stenographic record seems to have been made. The affidavit gives what affiant says was the substance of the argument and his belief of its effect on the jury. The trial court, which heard the arguments, and which had the affidavit before it, by its denial of a new trial must have concluded that the argument did not have the effects assigned to it by appellant. Our examination of the record leads to the conclusion there was no prejudicial error.

In a general review, appellant insists the judgment is wrong and should not be permitted to stand, at the same time recognizing that there is some evidence tending to support the verdict of the jury and the judgment of the trial court. An affirmance of the judgment might be based on the admission. We have, however, reviewed the entire record, and have concluded the judgment is not wrong but the result of a fair trial of the only issue involved.

The judgment of the trial court is affirmed.